UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD MORAN, TONY CAUDILL,
RUSSELL JUDD, DENISE MATUSKA,
NEIL BALFOUR, RANDALL GOGOWSKI,
GLENN JOHNSON, and CHARLES NOBAR,

    Plaintiffs,

-vs-

Case No. 07-12186
Judge Avern Cohn

WILLIAM A. BERNARD, RAYMOND J.
BURATTO, H.R. HILLARD, ROBERT J.
LAWLOR, HOWARD MCDOUGALL, and
ROBERT F. RAYES as TRUSTEES OF THE
MICHIGAN CONFERENCE OF TEAMSTERS
WELFARE FUND,

    Defendants.

_____/

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

### I. Introduction

This is an action for breach of fiduciary duty under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"). The seven plaintiffs are each active participants in the Michigan Conference of Teamsters Welfare Fund ("the Michigan Fund"), a health and welfare fund subject to ERISA. The Fund maintains various health benefit "package" plans. The plaintiffs claim that defendants, Trustees of the Fund, breached their fiduciary duty to participants by amending a particular plan, the

1

"TIF" plan, to provide reduced benefits to participants. They also claim that the amendment violated an ERISA provision requiring plan administrators to treat plan participants in a nondiscriminatory manner. The plaintiffs seek equitable relief requiring the defendants to restore the TIF plan to its pre-reduction benefit levels.

Before the Court is the defendants' motion to dismiss the action for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).[1] For the reasons that follow, the motion will be granted.

## II. Facts

The Michigan Fund is an ERISA-covered multi-employer health and welfare fund that provides benefits to participants whose employers contribute to the Fund. The plaintiffs in this case are participants in the Fund working for various contributing employers. The defendants are Trustees of the Fund who act both as "plan sponsors" that set the terms of the Fund's benefit plans and as fiduciary administrators of the Fund.

Participating employers contribute funds to the Plan on a per-employee basis at rates established by collective bargaining agreements between the employers and Teamsters local unions. The rates are incorporated into participation agreements executed by the employers and the Michigan Fund. The Michigan Fund maintains a variety of health benefit schedules that call for differing rates of contribution from the employers.

---

[1] The defendants also seek attorneys' fees and costs incurred in defending the action. The Court does not consider an award of fees appropriate under the circumstances, and to this extent the defendants' motion will be denied.

2

The plaintiffs in this case were covered under the "TIF"[2] plan of benefits, one of the benefit schedules maintained by the Michigan Fund. The employer contribution rates for the TIF plan are established by a collective bargaining agreement between the Teamsters National Freight Industry Negotiating Committee ("TNFINC") and Trucking Management, Inc. ("TMI"), known as the National Master Freight Agreement ("NMFA"). The NMFA is effective from April 1, 2003 to March 31, 2008. It provides for a specified level of employer contributions to the Michigan Fund that increases by $24 per week for the first four years that the NMFA is in effect, and by $28 per week in the fifth and final year.

In 2005, TNFINC and TMI agreed to modify the NMFA so that the scheduled contribution increases for the TIF plan in 2004 and 2005 would be diverted out of the Michigan Fund and into another multi-employer plan established by the NMFA, the Central States Pension Fund. The parties also began to consider whether to reallocate the scheduled 2006 contribution increase in a similar fashion, and they ultimately did so over the objection of the defendant Trustees. As a result of these reallocations, the Fund received less in the way of contributions than originally provided for in the NMFA: $24 per participant per week less than originally provided beginning in January 2005, $48 per participant per week less beginning in August 2005, and $72 per participant per week less beginning in August 2006.

While the NMFA, as amended, specifies the rate of employer contributions to the Michigan Fund, it does not determine the benefits to be provided to participating

---

[2] While the acronym may have some historical significance, the parties have been unable to determine what if anything "TIF" stands for.

3

employees. Rather, the Trustees have discretion to establish and modify the various benefit plans. With respect to the TIF plan, the Trustees explicitly reserved the right to make amendments to the plan, including "increases, modifications, reductions or the elimination, in whole or in part, of certain benefits...for any reason."

In August 2006, the Trustees designated a new plan, known as "TIF 2," into which all employees then participating in the TIF plan were required to move. The benefits payable to employees under the TIF 2 plan were inferior to the benefits of the original TIF plan.[3] The Trustees claim that the benefit levels established in the original TIF plan assumed that the Fund would receive the scheduled contribution increases, and that when these increases failed to materialize, it was necessary to reduce benefit levels in order to ensure that the Fund remained financially sound. The plaintiffs claim that the decrease in benefit levels was designed to rally support among participants to undo the contribution reallocation and capture more income for the Fund.

In February 2007, the Trustees notified participating employers that they were reducing the contribution rates associated with most benefit schedules "due to the improved financial condition of the Fund." However, this reduction in employer contribution levels did not apply to the TIF plan.

### III. Legal Standard

A Fed. R. Civ. P. 12(b)(6) motion seeks dismissal for a plaintiff's failure to state a claim upon which relief can be granted. "The court must construe the complaint in the

---

[3] The differences in benefit levels between the two plans are evident from a comparison of the Schedule of Benefits for TIF plan, promulgated in July 2001, and the Schedule of Benefits for the TIF 2 plan, promulgated in July 2006.

4

light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief."  Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th Cir. 2001).  "To survive a motion to dismiss under Rule 12(b)(6), a 'complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'"  Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n., 176 F.3d 315, 319 (6th Cir. 1999) (quoting Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)).

## IV. Breach of Fiduciary Duty

### A.  The Law

ERISA imposes fiduciary duties to the extent that an individual exercises discretionary authority over the management of a covered plan or its assets.  29 U.S.C. § 1002(21)(A).[4]  That is, ERISA's fiduciary duties apply to administrators of existing plans, but not to employers or other "plan sponsors" who create plans and establish their terms.  When an employer or other entity acts "in dual roles as plan sponsor and plan administrator...[its] fiduciary duties under ERISA are implicated only when it acts in the latter capacity."  Beck v. Pace Int'l Union, et al., 551 U.S. ___ (2007).  Thus, before addressing whether the defendants' conduct meets the stringent fiduciary standards

---

[4] 29 U.S.C. § 1002(21)(A) provides in pertinent part: "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.  Such term includes any person designated under section 1105(c)(1)(B) of this title."

5

imposed by ERISA, see 29 U.S.C. § 1104(a), the Court must consider whether the Trustees' amendment of the TIF plan is a fiduciary action.

Numerous cases hold that "settlor functions" carried out by plan sponsors, including the decision to establish, terminate, or amend an ERISA-covered benefit plan, do not implicate the fiduciary duties imposed by ERISA. See, e.g., Beck, 551 U.S. ___ (2007); Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 443-44 (1999); Lockheed Corp. v. Spink, 517 U.S. 882, 890-91 (1996); Curtiss-Wright Corp v. Schoonejongen, 514 U.S. 73, 78 (1995). ERISA makes clear that a person becomes a fiduciary "only when fulfilling certain defined functions, including the exercise of discretionary authority or control over plan management or administration." Spink, 517 U.S. at 890; see also 29 U.S.C. § 1002(21)(A). While ERISA imposes restrictions on management of covered plans once they are created, the statute does not create any substantive entitlement to any kind of benefit, and "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." Curtiss-Wright, 514 U.S. at 78. When plan sponsors undertake such actions, "they act not as fiduciaries, but are analogous to the settlors of a trust." Spink, 517 U.S. at 890 (citations omitted). "Amending a plan is not an act of plan 'management' or 'administration,' and is accordingly not subject to fiduciary review." Coomer v. Bethesda Hosp., Inc., 370 F.3d 499, 508-09 (6th Cir. 2004).

## B. Discussion

The Trustees' decision to alter the terms of the TIF plan does not implicate the fiduciary duties imposed by ERISA. Decisions as to "who is entitled to receive Plan benefits and in what amounts, or how such benefits are to be calculated," are settlor

6

functions immune from fiduciary constraints.  Hughes Aircraft, 525 U.S. at 444.  The amendment at issue in this case dealt precisely with the amount of benefits to which participants were entitled.  This case thus falls squarely within the line of precedents holding that "settlor functions," including the establishment of benefit levels, do not implicate ERISA's fiduciary duties.  Fiduciary constraints apply only to the management of an established fund, including actions such as the administration of the plan's assets. Id.

The plaintiffs emphasize that courts use a "functional test" to determine fiduciary status that depends on an "analysis of the factual context," and argue that the Court should therefore allow discovery in order to develop the record necessary for such an analysis.  The phrase "functional test," however, is no more than a restatement of the principle that "[f]iduciary status...is not an all or nothing concept" and it is necessary to "ask whether a person is a fiduciary with respect to the particular activity in question." Briscoe v. Fine, 44 F.3d 478, 486 (6th Cir. 2006) (citations omitted).  "The functional definition of fiduciary does not include decisions concerning plan design; such as the form or structure of the plan, what benefits will be provided, who will be entitled to receive them, and how they will be calculated."  Gard v. Blankenburg, 33 Fed. Appx. 722, 729 (6th Cir. 2002).

Likewise, while the plaintiffs correctly note that the Supreme Court has stated that the categories of plan "management" and "administration" "are not self-defining," Varity v. Howe, 516 U.S. 489, 502 (1996), it is by now well established that the sponsor's decision to amend the terms of a plan is a settlor function not subject to fiduciary obligations.  "*[W]ithout exception*, plan sponsors who alter the terms of a plan

7

do not fall into the category of fiduciaries." Hughes Aircraft, 525 U.S. at 445 (quotation marks and citations omitted) (emphasis added). Regardless of what additional facts might be developed in discovery, defendants' actions cannot be a breach of the fiduciary duties imposed by ERISA.

Finally, the plaintiffs suggest that the amendment to the TIF plan "was intended to give the Trustees leverage with the participants and their elected leaders to undo the contribution reallocation and capture income for the Fund." This is irrelevant. Under ERISA, plan sponsors are free to amend the plan "for any reason at any time." Curtiss-Wright, 514 U.S. at 78.

### V. Unlawful Discrimination

#### A. The Law

The plaintiffs also argue that the Trustees' amendment to the TIF plan violates the duty imposed by ERISA § 510, 29 U.S.C. § 1140,[5] to treat Fund participants in a nondiscriminatory matter. Complaint ¶¶ 33, 40. Section 510 imposes a duty on plan administrators to apply the terms of the plan faithfully and uniformly with respect to all

---

[5] 29 U.S.C. § 1140 provides in pertinent part: "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C. 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act. The provisions of section 1132 of this title shall be applicable in the enforcement of this section."

8

participants.[6]  However, the anti-discrimination provision does not apply against plan sponsors when they undertake settlor functions such as amending a plan.  As with the ERISA provisions imposing fiduciary duties, § 510 "draws a line between an employer's right to modify or abolish a plan – which it may do without acting as a fiduciary for the workers – and the employer's duty to provide employees the benefits of existing plans." Shahid v. Ford Motor Co., 76 F.3d 1404, 1412 (6th Cir. 1996).  Only the when carrying out the latter function are employers or other entities subject to the nondiscrimination rule of § 510.

## B.  Discussion

The Trustees' decision to alter the terms of the TIF plan does not implicate the nondiscrimination rule of § 510.  As noted above, § 510 requires only that plan administrators follow the terms of any plan so long as it remains in effect.  Shahid, 76 F.3d at 1414.  Plan sponsors remain free to amend a plan, even if such amendment adversely affects some participants, without running afoul of § 510.  In this case, the Trustees amended the terms of the plan to reduce the amount of benefits due to plan participants.  The Trustees' actions in terms of administering the plan after its terms were amended are not at issue.  Accordingly, the plaintiffs' complaint does not state a claim for violation of § 510.  See, e.g., Coomer, 370 F.3d at 507 (holding that amending pension plan to permit lump sum benefit payment to one participant but not others was

---

[6] Courts have recognized two ways in which plan administrators may violate § 510: (1) "interference" violations, in which administrators seek to prevent participants from availing themselves of rights under ERISA; and (2) "exercise" or "retaliation" violations in which administrators take adverse action against participants who avail themselves of such rights.  Mattei v. Mattei, 126 F.3d 794, 797 (6th Cir. 1997).

9

not discrimination within the meaning of § 510); Deeming v. Am. Standard, Inc., 905 F.2d 1124, 1128-29 (7th Cir. 1990) (holding that amending a plan to eliminate certain pension benefits was not discrimination within the meaning of § 510).

### V. Conclusion

The defendants' motion for summary judgment on the claims for breach of fiduciary duty and unlawful discrimination under ERISA is GRANTED. The defendants' motion for fees and costs is DENIED. The case is DISMISSED.

SO ORDERED.

                                   s/Avern Cohn
                                   AVERN COHN
                                   UNITED STATES DISTRICT JUDGE

Dated: October 3, 2007

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 3, 2007, by electronic and/or ordinary mail.

                                   s/Julie Owens
                                   Case Manager, (313) 234-5160